IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC. CLERK, CHARLESTON, SC

2013 MAY 14  A 9 12

| | | |
|---|---|---|
| Matthew Coyle, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 9:12-724-RMG |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Commissioner of Social Security denying his claim for Disability

Insurance Benefits ("DIB") due to bipolar and anxiety disorders. In accord with 28 U.S.C.

§ 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate

Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on

April 8, 2013, recommending that the Commissioner's decision be affirmed. (Dkt. No. 16). The

Plaintiff filed objections to the Report and Recommendation and the Commissioner filed a reply.

(Dkt. Nos. 18, 19). As more fully set forth below, the decision of the Commissioner is reversed

and remanded for further action consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is

-1-

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. *Id.* § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to

-3-

provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).   Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight.  Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5).  The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions.  SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Discussion

Plaintiff asserts an onset of disability from July 1, 2008, when he was then 29 years of age.  The record establishes that Plaintiff has not worked since the alleged onset of disability based upon bipolar and anxiety disorders.  Plaintiff has been under the care of Dr. Jeffrey K. Smith, a board certified psychiatrist,[1] during almost the entire period of Plaintiff's alleged

---

[1] On South Carolina Department of Labor, Licensing and Regulation's website, www.llronline.com, under "Licensee Lookup" select "Medical Examiners" then search "Jeffrey Smith."

disability. Dr. Smith's treatment records, which reflect nearly two dozen office visits with Plaintiff over a period extending from August 20, 2008 until November 9, 2010, indicate that the patient has progressed from a clinically unstable patient with severe mood swings and suicide attempts and ideations to a relatively well managed and stable patient on a significant number of psychiatric medications. Transcript of Record ("Tr.") 246-53, 305-15, 319, 322, 324-25. Throughout Plaintiff's treatment course with Dr. Smith, he has remained out of work and functioned within the less stressful confines of his home. The record indicates that Plaintiff is able to perform chores around the home, drive his children to school, garden, and shop at the local grocery store. Tr. 47-48, 54.

Despite Plaintiff's improved functioning in the home setting, Dr. Smith is firmly of the opinion that his patient's psychiatric condition renders him unfit to perform regular duties of employment. He indicates that Plaintiff would have "extreme" difficulties maintaining social functioning in the workplace and would be unable to maintain the level of concentration, persistence, and pace necessary to complete job tasks in a timely manner. Tr. 300. Dr. Smith explains that Plaintiff "cannot withstand stress, cannot be punctual/reliable, cannot meet quotas/production standards and cannot effectively deal with peers, supervisors, and public." *Id.* Dr. Smith's opinions regarding the impact of Plaintiff's mental impairments on his ability to function in the workplace are based on his special expertise as a board certified psychiatrist and his insight gained from his long involvement in the treatment of the claimant.

Plaintiff underwent a mental status evaluation with Todd Morton, Ph.D., of Carolina Psychological Services on August 18, 2009, apparently on a referral from the Social Security Administration. Dr. Morton documented the patient's history of significant bipolar disease and

work related difficulties, including attendance problems and "conflicts and arguments with supervisors and coworkers." Tr. 257-59. Dr. Morton concluded that because Plaintiff is "short tempered and easily irritated" from his mood disorder, "he likely would not get along well with coworkers, or with the public or with supervisors." Tr. 259. He also observed that Plaintiff's "ability to follow through in work consistently over an extended period of time is questionable." *Id.* Dr. Morton's opinions are based on his special expertise as a practicing psychologist and his one-time examination of Plaintiff and are largely consistent with the opinions of Dr. Smith.

The testimony of Plaintiff at his administrative hearing corroborated the opinions of his treating physician, Dr. Smith, and the examining physician, Dr. Morton. Plaintiff explained that his medications reduced the worst symptoms of his bipolar and anxiety disorders so that he is now not suicidal and his manic episodes "are not as drastic." Tr. 59. He testified that he had a history of problems handling stress in work settings and this had led to altercations with supervisors and coworkers, resulting in his termination from employment. Tr. 39-40. Plaintiff testified that he did not believe that he would be able to function in the work place because of his bipolar and anxiety disorders. Tr. 37.

In addition to the opinions offered by the treating and examining physician, the record contains two opinions offered by chart reviewers, who have neither treated nor examined the Plaintiff. Dr. Craig Horn, a psychologist, recognized Plaintiff's diagnoses of bipolar and anxiety disorders and concluded that these impairments would cause claimant to have "moderate" limitations in maintaining social functioning and concentration, persistence, and pace. Tr. 261, 264, 266, 271. Dr. Horn also observed that Plaintiff would likely "perform best in situations that do not require on-going interaction with the public." Tr. 277. Mr. Robbie Ronin also evaluated

Plaintiff's chart and concluded that while "the claimant's impairments are severe" they would not preclude the performance of certain simple and routine tasks or "the ability to interact appropriately with coworkers or supervisors." Tr. 281.

The record, thus, contains widespread consensus among the various experts that Plaintiff suffers from significant psychiatric disorders, most notably bipolar disease and anxiety, and those disorders negatively impact on his ability to function in the work place. The area of dispute among the various expert opinions in the record centers on whether those psychiatric disorders render Plaintiff unable to perform essential functions of employment, including the ability to maintain concentration, persistence, and pace in the work place and to maintain suitable social functioning with supervisors, coworkers, and the public. Plaintiff's treating physician, Dr. Smith, and an examining expert, Dr. Morton, have indicated that Plaintiff would likely experience significant problems in these areas, with Dr. Smith unequivocally concluding that Plaintiff's limitations would be "extreme." Tr. 257-69, 299-304. On the other hand, the chart reviewers have concluded that Plaintiff's impairments are certainly present but manageable and that he is not disabled from work. Tr. 261-78, 279-96.

Under the Treating Physician Rule, the Commissioner would generally give more weight to the opinions of treating and examining medical sources. 20 C.F.R. § 404.1527(c)(1)-(2). Where the opinions of the treating physician are not given controlling weight, the Commissioner pledges to evaluate each opinion in light of a series of enumerated factors, including the length of treatment, the nature of the treatment provided, the supportability of the opinion, the consistency of the opinion, and whether the treating physician is specialized. *Id.* § 404.1527(c)(2)-(5). Under these standards, the opinions offered by a long-treating board certified psychiatrist, such as Dr.

Smith, should generally receive the highest level of deference and weight and the opinions of non-treating and non-examining chart reviewers should generally receive the least amount of deference and weight.

The Administrative Law Judge ("ALJ"), essentially turning the Treating Physician Rule on its head, gave "very little weight" to the opinions of Dr. Smith, the long serving treating physician, and discounted the opinions of the examining physician, Dr. Morton, as mere "musing" not entitled to serious consideration because his examination was "a one time snapshot." Tr. 19-20. Instead, he gave "great weight" to the chart reviewers, contending that their opinions were supported by the record. Tr. 20.

The ALJ's analysis is clearly inconsistent with the mandates of the Treating Physician Rule. First, the Commissioner is obligated to weigh a treating physician's opinions in light of a series of enumerated factors relating to the nature and extent of the treatment relationship and whether the treater is specialized and offering an opinion in the area of his specialization. The ALJ fails to address most of these factors set forth in the Treating Physician Rule. Second, the ALJ's rejection of Dr. Smith's opinions appears to be primarily based on the premise that Plaintiff's relatively stable condition in the home setting and ability to perform certain activities of daily living ("ADLs") are inconsistent with the physician's opinions that the claimant's psychiatric condition renders him incapable of handling the social relationships and persistence and pace of the work setting. However, even the chart reviewers recognize that Plaintiff's psychiatric condition significantly impacts his social functioning and persistence and pace in the work place, notwithstanding his relatively stable condition and performance of ADLs in the home setting. Thus, the premise of the ALJ—that Plaintiff's relative stability at home renders

-8-

the opinions of Dr. Smith that Plaintiff has extreme impairments in the work setting unworthy of significant weight and consideration—substitutes the ALJ's opinions for those of Plaintiff's treating and examining medical sources.[2]

This misapplication of the Treating Physician Rule mandates reversal of the Commissioner's decision and remand for a proper evaluation of the expert opinions contained in the record. On remand, Dr. Smith's opinions should be explicitly weighed in light of the treatment history, including the length and extent of treatment, his area of specialization, and other factors set forth in the Treating Physician Rule, mindful of the general deference to be afforded the opinions of treaters. The opinions of Dr. Morton should be weighed in light of his examining history and the general deference given examiners when weighed against the opinions of non-examining experts. Any rejection of these opinions should be based on appropriate evidence in the record and in accord with the Treating Physician Rule and not simply the substitution of the opinion of the ALJ for that of the treating and examining medical sources.[3]

---

[2] Dr. Smith's opinions regarding the impact of Plaintiff's mental disease process on his ability to function in the work place draw upon the physician's special training and experience and may not be summarily rejected by the ALJ on his personal belief that a bipolar patient's relative stability at home is inconsistent with the opinion that a patient cannot function adequately in the work setting.

[3] The ALJ summarily rejected the testimony of the claimant at the administrative hearing on the basis that "[m]uch of this testimony was in response to unnecessarily leading and suggestive questioning, all of which tended to degrade the quality and credibility of his responses." Tr. 17. The Court regards this as a very odd and unacceptable basis to reject the testimony of a claimant, which the Commissioner pledges to consider in reaching a disability determination. 20 C.F.R. § 404.1545(a)(1). It is well established that the Social Security administrative hearings are informally conducted and are not subject to the Federal Rules of Evidence. If the ALJ considered counsel's questions unnecessarily leading, he could *at the time* have raised his concern and directed counsel to ask less leading questions. But for the ALJ to simply sit silently by while a claimant's attorney is questioning his client and then after the fact reject the highly probative testimony on the basis of the style of the questioning is not

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the

Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion

pursuant to Sentence Four of 42 U.S.C. § 405(g).

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

May 14, 2013
Charleston, South Carolina

---

appropriate. Moreover, the Court has reviewed the questions and responses between Plaintiff
and counsel and does not view them as unduly leading or improper. Tr. 32-61. On remand, the
ALJ should fully and fairly consider and weigh the testimony of Plaintiff.

-10-